# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| KORY SIJUAN CLAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:12CV2001 CDP |
| | ) | |
| TROY STEELE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court upon the motion of plaintiff Kory Sijuan Clay (Reg. No. 516775), an inmate at Potosi Correctional Center, for leave to commence this action without payment of the required filing fee. For the reasons stated below, the Court finds that the plaintiff does not have sufficient funds to pay the entire filing fee and will assess an initial partial filing fee of $77.33. See 28 U.S.C. § 1915(b)(1). Furthermore, after reviewing the complaint, the Court will dismiss the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B).

## 28 U.S.C. § 1915(b)(1)

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent

of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10, until the filing fee is fully paid. Id.

Plaintiff has submitted an affidavit and a certified copy of his prison account statement for the six-month period immediately preceding the submission of his complaint. A review of plaintiff's account indicates an average monthly deposit of $133.58, and an average monthly balance of $386.67. Plaintiff has insufficient funds to pay the entire filing fee. Accordingly, the Court will assess an initial partial filing fee of $77.33, which is 20 percent of plaintiff's average monthly balance.

## 28 U.S.C. § 1915(e)

Pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court must dismiss a complaint filed in forma pauperis if the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. An action is frivolous if it "lacks an arguable basis in

either law or fact." Neitzke v. Williams, 490 U.S. 319, 328 (1989). An action is malicious if it is undertaken for the purpose of harassing the named defendants and not for the purpose of vindicating a cognizable right. Spencer v. Rhodes, 656 F. Supp. 458, 461-63 (E.D.N.C. 1987), aff'd 826 F.2d 1059 (4th Cir. 1987).

To determine whether an action fails to state a claim upon which relief can be granted, the Court must engage in a two-step inquiry. First, the Court must identify the allegations in the complaint that are not entitled to the assumption of truth. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950-51 (2009). These include "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." Id. at 1949. Second, the Court must determine whether the complaint states a plausible claim for relief. Id. at 1950-51. This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950. The plaintiff is required to plead facts that show more than the "mere possibility of misconduct." Id. The Court must review the factual allegations in the complaint "to determine if they plausibly suggest an entitlement to relief." Id. at 1951. When faced with alternative explanations for the alleged misconduct, the Court may exercise its judgment in determining whether plaintiff's conclusion is the most plausible or whether it is more likely that no misconduct occurred. Id. at 1950, 51-52.

**The Complaint**

Plaintiff, an inmate at Potosi Correctional Center ("PCC") brings this action pursuant to 42 U.S.C. § 1983 alleging violations of his civil rights.  Named as defendants are: Troy Steele (Warden, PCC); Correctional Medical Services ("CMS" or "Corizon"); Mike Miller (Classified Correctional Caseworker, PCC); Jarrod Bolin (Correctional Officer, PCC); Corey Uptegrove (Correctional Officer; PCC); Terri Rich (Correctional Officer, PCC); Orville McDonald (Correctional Officer, PCC); Jason Crawford (Correctional Officer, PCC); Unknown Discus (Correctional Officer, PCC); Teri Lawson (Functional Unit Manager, PCC); Claire Dix (Functional Unit Manager, PCC); S.L. Shawyer (Classified Correctional Caseworker, PCC); Jamie Crump (Asst. Warden, PCC); Michael Bowersox (Warden, South Central Correctional Center ("SCCC")); and Securus Technologies, Inc.

**A.      Defendant Troy Steele**

Plaintiff complains that Troy Steele, as the Warden of PCC, is "responsible directly or indirectly for the behavior and conduct of his employees."  Plaintiff asserts, in a wholly conclusory manner, that defendant Steele is responsible for a long list of alleged "unlawful conduct" purportedly done by others, including: (1) "fail[ing] to take action against officers who have physically intimidated plaintiff,

-4-

"sexually battered"[1] plaintiff, issued plaintiff false conduct violations/rule breakage reports and made plaintiff the target of constant cell searches and body searches that have resulted in plaintiff's legal documents, court documents and legal filings being disorganized and strewn about [his] assigned cell"; (2) failing to follow "standard operating procedures" with regard to allowing inmates to inspect their property immediately after being transferred to a new MDOC facility and file grievances if the property is damaged or missing; (3) allowing officers in the Protective Custody Unit to undertake "rough" or too many body cavity searches; (4) failing to ensure his employees were providing inmates with grievance materials; (5) allowing staff in the Protective Custody Unit to "institute a hierarchy. . .with the prison inmates falsely accusing each other of minor or major claims of rule breakage. . .to help regulate bedspace in the Protective Custody Unit"; (6) allowing officers to verbally threaten and harass plaintiff; (7) telling staff members that inmates in Protective Custody and Administrative Segregation cannot have access to certain newspapers or magazines during their stay in Segregation, which plaintiff believes violates the 1st Amendment; (8) telling staff members to issue false conduct violation reports against plaintiff and hold plaintiff in a long-term isolation cell in Administrative Segregation without providing him

---

[1]Plaintiff does not describe the alleged "sexual battering."

with a hearing, in violation of his due process rights; (9) having money removed from plaintiff's inmate account by "fraudulently charging" him for "damaging and ripping" inmate bedsheets and clothing; (10) failing to order the proper equipment and provide the "proper protein" for kosher diets for those, like plaintiff, whose religion (Al-Islam) calls for following a strict kosher diet[2]; (11) limiting plaintiff's ability to purchase postage (and access to courts) by restricting him to only spending $20.00 per month while in Administrative Segregation on all personal hygiene, stationary, toiletries and postage; (12) forcing plaintiff to clean the showers in the Administrative Segregation Unit, without pay, from March through September 2012; (13) allowing staff in the Protective Custody Unit to subject plaintiff to "hardship, intimidation and false claims of disruptive conduct/behavior."; (14) allowing staff in the Protective Custody Unit to "force plaintiff to remove inmates (who are plaintiff's enemy) off his institutional enemy list. . ."[3]; and (15) allowing plaintiff to be verbally "targeted for racial

---

[2]Plaintiff alleges that defendant Steele has consistently refused to do his duty and fails to provide "proper protein" to those on strict kosher diets - such as "turkey, lamb and fish without scales." Plaintiff claims that inmates on kosher diets are instead served several meals of cottage cheese, saltine crackers, spinach leaves and broccoli.

[3]Plaintiff does not allege that defendant Steele ever placed him with a known enemy.

intimidation[4], threats, denial of grievance procedure, sexual harassment and battery, bias treatment and false accusations by Michael Miller and Teri Lawson."

## B.    Defendant Correctional Medical Services/Corizon, Inc.

Plaintiff states that since 2007, he has suffered numbness in his left leg, toes arm and fingers.  He states that occasionally he has gone to the health unit at the various prisons in which he has been housed – South Central Correctional Center, Eastern Reception, Diagnostic Correctional Center and PCC – and he claims that he has complained of "heart/chest" pain.  He states that after several exams by unnamed doctors employed by CMS/Corizon, he has been told that he is suffering either "a minor ailment, poor/lack of exercise activities or that it's more mental than physical."  However, plaintiff states that despite being told by medical providers to the contrary, he believes that he has been suffering from a blood clot these past six years and that Corizon, Inc.  has been deliberately indifferently to his serious medical needs.[5]

_____

[4]Plaintiff does not provide specific facts as to the alleged "racial discrimination" except to state that he was subjected to verbal harassment.

[5]Plaintiff does not name an individual defendant employed by Corizon, Inc. who allegedly denied him appropriate medical care, nor does he state the alleged "serious health condition" he believes he suffers from, stating merely that he believes he has a blood clot.  See Estelle v. Gamble, 429 U.S. 97, 106 (1976) (To state a claim for medical mistreatment, plaintiff must plead facts sufficient to indicate a deliberate indifference to serious medical needs.); see also Camberos v. Branstad, 73 F.3d 174, 175 (8th Cir. 1995).  Allegations of mere negligence in giving or failing to supply medical treatment will not suffice.  Estelle, 429 U.S. at 106.  In order to show deliberate indifference, plaintiff must allege that he suffered an objectively serious

-7-

**C.     Defendant Michael Miller**

Plaintiff states that defendant Miller, caseworker in the Protective Custody Unit at PCC, verbally threatened him in March of 2012, relating to a grievance plaintiff filed seeking reimbursement for damaged property.  Plaintiff states that he was told by defendant Miller that if he did not drop the grievance he would risk being placed back in Administrative Segregation and the loss of new property.  Plaintiff alleges that defendant Miller later denied him access to file additional grievance forms, telling him that he was filing way too many forms.

Plaintiff claims that defendant Miller required plaintiff to work a "dorm job" cleaning showers during his stay in Protective Custody.  Plaintiff complains that he was never paid for this work even though "it was a premium job pay slot for inmates."

Plaintiff alleges that defendant Miller did not intervene when other inmates who had been in the Protective Custody Unit for a longer time verbally harassed and intimidated him.  He claims that defendant Miller also upheld three false conduct violations against plaintiff even though Miller knew plaintiff was innocent of the charges.

---

medical need and that a specific defendant actually knew of but deliberately disregarded that need.  Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997).

Plaintiff asserts that defendant Miller, from August 2011 through January 2012, "forced plaintiff to go into a cell with inmates who was the plaintiff's enemy and inmates that defendant had knowledge that the plaintiff couldn't get along with and could possibly result in harming plaintiff." Plaintiff claims this was staff's way of degrading him and forcing him to double cell with "unstable" inmates in order to make him "struggle" before granting him a stay in Protective Custody.[6]

Plaintiff claims that defendant Miller worked in conspiracy with defendants Uptegrove, Bolin, Rich, Discus and Crawford to engage in "methods and strategies to force the plaintiff to leave the safety of the Protective Custody Unit." He claims these officers would verbally harass him and threaten him with physical violence and "use profanity and harsh language" against plaintiff to try to make him agree to move to General Population.

**D.      Defendant Jarrod Bolin**

Plaintiff asserts, in a conclusory manner, that defendant Bolin, correctional officer in the Protective Custody Unit at PCC, committed a "sexual battery" against plaintiff in September 2012. He asserts that during a pat search he "grop[ed]" plaintiff. Plaintiff fails to provide any additional information as to the alleged "groping."

---

[6]Plaintiff does not claim that he suffered any injuries as a result of these alleged acts.

Plaintiff additionally asserts that he was verbally harassed by defendant Bolin on several different occasions and that defendant Bolin made a nuisance of himself by continually searching plaintiff's cell for contraband and falsely accusing plaintiff of different conduct violations. Plaintiff claims that defendant Bolin was generally ill-mannered towards plaintiff - leaving his cell extremely untidy after the cell searches, often confiscating material from his cell and mixing up his legal papers.

**E.      Defendant Corey Uptegrove**

Plaintiff states that defendant Uptegrove, a correctional officer working in the Protective Custody Unit at PCC, subjected plaintiff to verbal harassment and threats of harm. Plaintiff alleges, in a conclusory manner, that defendant Uptegrove falsely accused him of possessing contraband, racially harassed him, initiated false conduct violations against him, stood and watched him while he was unlawfully "groped" by an unnamed person during a body search, and left his cell in disarray after instituting a cell search against him.

**F.      Defendant Terri Rich**

Plaintiff claims in a wholly conclusory manner that defendant Rich, a supervisor at PCC, allowed correctional officers under her command, to "carry out threats of harm" against plaintiff. He asserts without the addition of any facts, that

defendant Rich knew about a "pattern of abuse" of plaintiff from the officers she supervised including: threats of harm, false conduct violations, sexual taunts, cell searches, body searches, racial discrimination, and an environment of intimidation. Plaintiff claims in a conclusory manner that not only did defendant Rich fail to intervene in the "intimidating environment," but that she fostered the environment and instructed the correctional officers under her supervision to continue to harass plaintiff until he agree to leave the Protective Custody Unit.

Plaintiff additionally claims that defendant Rich gave plaintiff three false conduct violations within a three-hour period in June of 2012 and threatened to use chemical mace on him during an interview if he interrupted her. Plaintiff fails to state the contextual aspects of the alleged "interview" and whether he was indeed subjected to any alleged excessive force.

## G.  Defendant Orville McDonald

Plaintiff asserts that in September of 2012 defendant McDonald, a correctional officer at PCC, escorted him to the shower and gave him a thorough body search prior to allowing him to enter the shower facility. Plaintiff alleges that on two other occasions defendant McDonald falsely accused plaintiff of tearing or ripping bedsheets and gave him conduct violations for doing so. Plaintiff states that defendant McDonald also searched his cell in September of 2012 and

destroyed some of his "legal clippings and papers" belonging to plaintiff.  Plaintiff

believes that these acts interfered with his access to courts in violation of the First

Amendment.

## H.    Defendant Jason Crawford

Plaintiff alleges that defendant Crawford, a correctional officer at PCC,

violated his rights when he failed to allow him to "inventory his property" upon his

arrival in June of 2011 at PCC.  Plaintiff states that he was not allowed to

inventory and examine his property until he was released from Administrative

Segregation, whereupon he found out that several items had been damaged or were

missing.  Plaintiff claims that defendant Crawford acted in an unlawful manner,

"intentionally allow[ing] this damage to occur to plaintiff's property and belonging

to coerce plaintiff into spending revenue with the prison to purchase new

appliances and to intentionally cause plaintiff legal distress with the courts."

Plaintiff further asserts that between March and April of 2012 he had a

dispute with defendant Crawford regarding a pair of Sony headphones that he had

purchased.  He claims that defendant Crawford told him that he could not have the

headphones because he already had a pair of headphones on his property list.

Plaintiff states that he filed a grievances relating to Crawford's placement of the

headphones in his property box in the property room, but he has not heard back regarding the grievance.

Plaintiff additionally claims, in a conclusory manner, that defendant Crawford has been verbally abusive to plaintiff.

## I. Defendant Michael Bowersox

Plaintiff states, in a conclusory manner, that defendant Bowersox, Warden at SCCC, "refused to let plaintiff apply for protective custody status for months and during that time forced plaintiff to accept cellmates he wasn't compatible with and they were combative, aggressive and assaultive." He claims that between December and January of 2010, he was assaulted by another inmate, Ramsey White.[7]

Plaintiff states that defendant Bowersox granted him a transfer to protective custody between May and June 2011 at SCCC. He states that "during this time he was subjected to numerous false conduct violation reports claiming plaintiff had broken several minor prison rules." Plaintiff asserts in a conclusory manner that "these conduct reports was [sic] fabricated and directed to be carried out by correctional officers on the order of Defendant Michael Bowersox." Plaintiff

_____

[7]Plaintiff does not state whether he sought protective custody status prior to this incident, and if he did, who he applied to and whether inmate White was on his "enemy list."

further claims, also in a conclusory manner, that he was subjected to a retaliatory transfer to PCC and labeled a "disciplinary transfer," whereupon he was placed in Administrative Segregation upon his transfer to PCC "by retaliatory act of Defendant Michael Bowersox." Plaintiff believes that his "retaliatory transfer" is what resulted in the correctional officers at PCC to behave badly towards him, going so far as to allege that:

> Defendant Bowersox even without physically being at the Potosi Corr. Center has encouraged and manipulated other co-workers to treat the plaintiff with brute force, false conduct violations, threats of verbal or bodily harm and strategically place conduct violations reports to have the plaintiff placed in Administrative Segregation/Disciplinary Segregation for months at a time.

Plaintiff additionally asserts, in a conclusory manner, that defendant Bowersox "commissioned" his personal belongings to "be damaged and destroyed" during the transfer to PCC.

Last, plaintiff alleges that:

> Defendant Bowersox from the years 1997 to late 2000 (or early 2001) would implement different devices, mechanisms and tools of torture against the plaintiff. These different attacks by Defendant Bowersox was sometimes in the form of chemical, medical, physical and mental attacks designed to cause different types of harm and distress to the plaintiff. (Most were physical and mental damage.) The Defendant Michael Bowersox will lie, manipulate and use his position of influence, financial means, position of power/authority and connections with others at different levels of power and authority to assist with carrying out a vendetta against a person. The Defendant Bowersox will use this entrapment technique to bring about different

-14-

obstacles, downfalls and oppression against the prison (or persons) he's targeting. The Defendant Bowersox (and defendant Troy Steele) had planned months in advance how they would slowly and methodically carry out attacks against the plaintiff. The Defendant Bowersox instructed Defendant Steele how throughout the years he violated plaintiff's rights and caused plaintiff physical ailments and diseases and mental ailments and stress and was able to get away with it through his job and position title.

**J.     Defendant Unknown Discus**

Plaintiff asserts that defendant Discus, a correctional officer at PCC, would "harass and antagonize" plaintiff while he was housed in Protective Custody from March of 2012 to August 2012. Plaintiff states that defendant would try to intimidate him by addressing him as "son or buddy" and often start telling him, while he was in the dining room to "hurry-up and eat." Plaintiff alleges that defendant Discus would often suggest that the guards should "keep an eye" on plaintiff and watch for "any small move" so they could place him in Disciplinary Segregation.

**K.     Defendant Teri Lawson**

Plaintiff alleges defendant Lawson refused plaintiff's request, on several occasions, for grievance forms. Plaintiff states that defendant Lawson also verbally threatened to have plaintiff placed in Administrative or Disciplinary Segregation, as well as "racially harassed plaintiff."

Plaintiff states, in a wholly conclusory manner, that defendant Lawson, as a supervisor, would "send correctional officers to plaintiff's cell. . . to perform body searches. . .on the plaintiff pretending to be looking for contraband." Plaintiff further asserts that defendant Lawson "created an environment in the Protective Custody Unit" that encouraged other correctional officers to issue plaintiff false conduct violations and allowed other inmates to falsely accuse plaintiff of "having contraband, excess commissary items, prison weapons. . .and other false allegations to coerce plaintiff to leave Protective Custody. . . and to force him to work without payment while he was in Protective Custody."

Plaintiff also states, without any additional factual information, that defendant Lawson, "without necessary authorization," removed plaintiff from Protective Custody status and changed his status to General Population in September and October of 2012 "with no regard to plaintiff's safety." Plaintiff does not state that defendant Lawson placed him in General Population with a known enemy or that anything bad happened to him as a result of the purported move.

## L.    Defendant Claire Dix

Plaintiff asserts that defendant Dix, a correctional officer at PCC in charge of issuing clothing and bedding to inmates in the Administrative Segregation Unit,

violated his constitutional rights when she failed to provide him with proper changes of bedding and clothing in a timely basis, from July to September 2012. Plaintiff fails to state whether these three months in Administrative Segregation significantly differed from his time in the General Population.

Plaintiff further claims that defendant Dix would intentionally issue inmates torn bedding and clothing and allow the other correctional officers to issue the inmates conduct violations for the torn bedding/clothing and fail to intervene.

Plaintiff further alleges that defendant Dix failed to provide him with the "religious forms" he needed to fill out in order to attain a kosher diet. Thus, plaintiff alleges that defendant Dix interfered with his freedom of religion. Last, plaintiff alleges that defendant Dix, in her role on the Protective Custody Committee as a a Functional Unit Manager, became aware of the actions of defendant Shawyer and his failure to allow plaintiff access to grievance forms. Plaintiff states that defendant Dix failed to intervene on his behalf.

## M.    Defendant S.L. Shawyer

Plaintiff complains that defendant Shawyer "restricted" or "limited" his access to the prison grievance system several times between September and October of 2012. Plaintiff also complains that defendant Shawyer restricted his access to order and receive several newspapers in September and October of 2012.

Plaintiff states that he was told this restriction on ordering newspapers was only in place while inmates are housed in the Disciplinary Segregation Unit, per order of the Warden. Plaintiff further asserts, in a wholly conclusory fashion, that defendant Shawyer "refused to allow plaintiff to seek protective custody. . .or to allow plaintiff to be relocated to a safe and secure prison unit elsewhere."

## N.    Defendant Jamie Crump

Plaintiff alleges that defendant Crump, a correctional officer at PCC, falsely accused him of damaging a bed sheet and gave him a false conduct violation and charged him $3.50 for the alleged damage. Plaintiff asserts that he also received ten (10) days in Disciplinary Segregation as a result of a false conduct violation from defendant Crump.

The majority of plaintiff's allegations against defendant Crump concern his capacity as a "supervisor" of other employees. Plaintiff states in a conclusory manner that defendant Crump has "allowed his employee," defendant McDonald, to "intentionally lie and place false charges and conduct violation reports against plaintiff and other prisoners in the Administrative Segregation Unit." Plaintiff claims that defendant Crump has failed to investigate defendant McDonald's bad practices and refused to look into McDonald's "pattern of abuse and questionable conduct."

Plaintiff further states that defendant Crump has allowed officers under his supervision to "abuse" or "mistreat" prisoners and "swept" this mistreatment "under the rug," or "disguised it under false pretenses." Plaintiff argues that defendant Crump has "encouraged staff members at the prison to confiscate plaintiff's family photos/pictures and label the pictures as being on the verge of pedophilia or child pornography." Plaintiff also complains, as he has for many of the other supervisory defendants, that defendant Crump has failed to assist plaintiff in receiving the proper kosher diet in a timely manner.

## O.    Defendant Securus Technologies, Inc.

Plaintiff believes defendant Securus Technologies, Inc., the company that "provides phone service to prisoners/inmates throughout the Missouri Department of Corrections has violated plaintiff's rights, subjected plaintiff to cruel and unusual punishment and violated telecommunications laws." Plaintiff alleges in a conclusory manner that Securus has blocked his telephone number and failed to allow his phone calls to "go through" to family members. He claims that Securus has "worked in collusion" with MDOC to "deny plaintiff access to communicating with family members, relatives or friends." Plaintiff states in an unsupported manner that he believes that the phone calls to his family members have been "blocked" to "limit plaintiff exposing how [MDOC] Officers and Staff have been

assaulting the plaintiff, verbally threatening the plaintiff, sexually harassing and battery against the plaintiff and detaining the plaintiff in administrative segregation/solitary confinement for months at a time by placing false conduct violation reports against the plaintiff. . ."

**P.      Relief Sought**

Plaintiff seeks both injunctive relief and compensatory damages in his complaint.  He additionally seeks punitive damages, as well as a transfer to a Protective Custody unit at a different facility.

**Discussion**

**Defendant Securus Cannot Be Held Liable Under 42 U.S.C. § 1983**

Plaintiff claims that defendant Securus Technologies, Inc., the private telephone company that contracts with MDOC to provide inmates with telephone services, has violated his rights to communicate with his family.  It is not clear what rights under the Constitution plaintiff believes have been violated by Securus, and he has not specifically named any federal telecommunication laws he believes

the company has violated.[8] Thus, he has failed to state a claim against defendant

Securus Technologies, Inc. under 42 U.S.C. § 1983 and/or any other federal law.

To establish a prima facie case under 42 U.S.C. § 1983, a plaintiff must

allege two elements: (1) the action occurred "under color of law" and (2) the

action is a deprivation of a constitutional right or a federal statutory right. Parratt v.

Taylor, 451 U.S. 527, 535 (1981). Securus Technologies, Inc. is a private

company that cannot be held liable under § 1983 unless plaintiff alleges, with

specificity, a joint action with the State or its agents. See Mershon v. Beasely, 994

F.2d 449, 451 (8th Cir. 1993). "In construing that test in terms of the allegations

necessary to survive a motion to dismiss, this circuit has held that a plaintiff

seeking to hold a private party liable under § 1983 must allege, at the very least,

---

[8]If plaintiff is asserting a violation of his First Amendment free speech rights, the Court feels compelled to point out that he has alternative ways of communicating with his family members and friends in the outside world - personal visits and mail as well as use of the telephone service. See, e.g., Overton v. Bazzetta, 539 U.S. 126, 135 (2003) ("Alternatives to the type or amount of speech at issue need not be ideal. . .they need only be available."); see also Benzel v. Grammar, 869 F.2d 1105, 1109 (8th Cir. 1989) (finding that "[t]he policy at issue only limits inmates' right to communicate by telephone, not their mail or visiting privileges."). A prisoner has no right to unlimited telephone use. Benzel, 869 F.2d at 1108; Lopez v. Reyes, 692 F.2d 15, 17 (5th Cir.1982). Although in some instances prison inmates may have a right to use the telephone for communication with relatives and friends, prison officials may restrict that right in a reasonable manner, "subject to rational limitations in the face of legitimate security interest of the penal institution." Hutchings v. Corum, 501 F.Supp. 1276, 1296 (W.D.Mo.1980). Plaintiff has not alleged that his telephone use has been restricted in an unreasonable manner, nor has he shown that his inability to communicate with others by telephone is causing him irreparable harm.

that there was a mutual understanding, or a meeting of the minds, between the private party and the state actor." <u>Mershon</u>, 994 F.2d  at 451.  Plaintiff has failed to allege the necessary "meeting of the minds" between a person employed by the Missouri Department of Corrections and a person employed by Securus such that his allegations against Securus could survive under § 1983.  As such, his claims that Securus "worked in collusion" with MDOC to deny him access to communicating with family and friends is subject to dismissal.

**Whether Plaintiff's Claims Against Defendants are for Actions Taken in Their Official Capacities**

The complaint is silent as to whether the individual defendants are being sued in their official or individual capacities.  Where a "complaint is silent about the capacity in which [plaintiff] is suing defendants, [a district court must] interpret the complaint as including only official-capacity claims." <u>Egerdahl v. Hibbing Community College</u>, 72 F.3d 615, 619 (8th Cir.1995); <u>Nix v. Norman</u>, 879 F.2d 429, 431 (8th Cir. 1989).  Naming a government official in his or her official capacity is the equivalent of naming the government entity that employs the official, in this case the State of Missouri.  <u>Will v. Michigan Dept. of State Police</u>, 491 U.S. 58, 71 (1989).  "[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983." <u>Id.</u>  As a result, the complaint fails to state

a claim upon which relief can be granted with respect to each and every individual defendant named in this lawsuit.

Similarly, plaintiff has failed to allege a claim for relief against defendant Corizon, Inc./CMS.  To state a claim against Corizon, Inc.,  plaintiff must allege that a policy or custom of Corizon, Inc. was responsible for the alleged constitutional violation.  <u>Monell v. Dep't of Social Services</u>, 436 U.S. 658, 690-91 (1978).  The instant complaint does not contain any allegations that a policy or custom of Corizon was responsible for the alleged violations of plaintiff's constitutional rights.  As a result, the complaint fails to state a claim against Corizon, Inc./CMS.

Even if plaintiff had properly named each of the individual defendants in their individual capacity, his claims would still be subject to dismissal.

**There is No Supervisory Liability Under 42 U.S.C. § 1983**

"Liability under § 1983 requires a causal link to, and direct responsibility for, the alleged deprivation of rights."  <u>Madewell v. Roberts</u>, 909 F.2d 1203, 1208 (8th Cir. 1990); <u>see also</u> <u>Martin v. Sargent</u>, 780 F.2d 1334, 1338 (8th Cir. 1985) (claim not cognizable under § 1983 where plaintiff fails to allege defendant was personally involved in or directly responsible for incidents that injured plaintiff);

Boyd v. Knox, 47 F.3d 966, 968 (8th Cir. 1995) (respondeat superior theory inapplicable in § 1983 suits).

In the instant action, plaintiff has not set forth any <u>non-conclusory</u> facts indicating that any of the named supervisory defendants were directly involved in or personally responsible for the alleged violations of his constitutional rights. As a result, the complaint fails to state a claim upon which relief can be granted with respect to the supervisory defendants: Troy Steele, Michael Bowersox, Terri Rich, Teri Lawson and Jamie Crump. <u>See</u> <u>also</u>, <u>Keeper v. King</u>, 130 F.3d 1309, 1314 (8th Cir. 1997) (noting that general responsibility for supervising operations of prison is insufficient to establish personal involvement required to support liability under § 1983); <u>Woods v. Goord</u>, 1998 WL 740782, at *6 (S.D.N.Y. October 23, 1998) (receiving letters or complaints does not render prison officials personally liable under § 1983).

**Plaintiff's Overall Allegations Are Conclusory and Are Not Entitled to An Assumption of Truth**

Although civil rights pleadings should be construed liberally, at the very least, however, the complaint must contain facts which state a claim as a matter of law and must not be conclusory. <u>Frey v. City of Herculaneum</u>, 44 F.3d 667, 671 (8th Cir. 1995). Like the complaint in <u>Ashcroft v. Iqbal</u>, which alleged that supervisory officials "knew of, condoned, and willfully and maliciously agreed to"

subject the plaintiff to harsh conditions for an illegitimate reason, plaintiff's conclusory allegations against the individual defendants in the instant complaint are conclusory, and they are not entitled to a presumption of truth. 129 S. Ct. at 1951.

The instant complaint asserts a plethora of vague allegations against the named defendants in this action that fail to reach a level of plausibility needed to state a claim under Iqbal. Plaintiff asserts that no less than fifteen (15) defendants have subjected him to numerous violations of his civil rights and insists that his handwritten, sixty-page complaint, which is largely devoid of specific factual allegations, brought against correctional officers and supervisors and corporate defendants, alike, should be enough to hold each an every one of those defendants responsible for every one of the alleged injustices he has taken the time to spell out for this Court. Unfortunately, plaintiff's complaint does not suffice to properly allege that the actions were known to the particular supervisory officials named as defendants, see Wilson v. City of N. Little Rock, 801 F.2d 316, 323 (8th Cir. 1986), and it assuredly does not plead adequately that the supervisors acted with the impermissible purpose as required by Iqbal. See Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995) ("a general responsibility for supervising the

operations of a prison is insufficient to establish the personal involvement required to support liability.").

As noted above, supervisors like cannot be held vicariously liable under § 1983 for the actions of a subordinate. <u>See</u> <u>Iqbal</u>, 129 S. Ct. at 1948. To state a claim, the plaintiff must plead that the supervising official, through his own individual actions, has violated the Constitution. <u>Id</u>. Where, as here, the alleged constitutional violation requires proof of an impermissible motive, the complaint must allege adequately that the defendant acted with such impermissible purpose, not merely that he knew of a subordinate's motive. <u>Id</u>.

Plaintiff's allegations are nothing more than a "[t]hreadbare recital[] of a cause of action's elements" and are not entitled to an assumption of truth. <u>Iqbal</u>, 129 S. Ct. at 1949. Because there are no non-conclusory allegations that would show that the supervisory defendants ordered the correctional officers to impinge upon plaintiff's constitutional rights, the complaint "stops short of the line between possibility and plausibility of 'entitlement to relief.'" <u>Twombly</u>, 550 U.S. at 557; <u>Iqbal</u>, 129 S. Ct. at 1949.

Additionally, plaintiff's allegations that defendants acted with an impermissible purpose is not a plausible conclusion in light of the fact that he has taken the time to name fifteen (15) defendants in a sixty-page handwritten

complaint, including a myriad of claims for relief, but without ever spelling out exactly how his rights have been violated in any particular instance.  C.f. Iqbal, 129 S. Ct. at 1950, 1951-52.

Indeed, the circumstances and history surrounding the filing of this action serve to convince this Court that the complaint is legally malicious.  Spencer, 656 F. Supp. at 463.  Plaintiff is no stranger to this Court.  This is the tenth action plaintiff has filed in this Court complaining of violations of his constitutional rights within the past several years.[9]  He also filed a case in the Western District of Missouri, pursuant to 42 U.S.C. § 1983, against defendant Bowersox and twenty-two other defendants.  See Clay v. Bowersox, 6:10CV3503 DW (W.D. Mo. 2011).  When determining whether an action is malicious, the Court need not look only to the complaint before it, but may also look to plaintiff's prior litigious conduct.  Cochran v. Morris, 73 F.3d 1310, 1316 (4th Cir. 1996).

Many of the defendants named in the prior actions in this Court and in the Western District's case are some of the same defendants named in the present

---

[9]See Clay v. Mitchell, 4:99CV373 SNL (E.D. Mo. 2000); Clay v. Luebbers, 4:00CV920 CAS (E.D. Mo.2000); Clay v. Simmons, 1:06CV137 LMB (E.D. Mo.2007); Clay v. Purkett, 4:06CV1859 CAS (E.D. Mo. 2007); Clay v. Simmons, 1:08CV39 LMB (E.D. Mo. 2008); Johnson and Clay v. Larkins, 4:11CV1870 CEJ (E.D. Mo. 2012); Clay v. St. Francois County Coroner, 4:12CV106 JAR (E.D. Mo. 2012); Clay v. Correctional Medical Services, 4:12CV355 JAR (E.D. Mo. 2012); Johnson and Clay v. St. Francois County Coroner, 4:11CV2057 TIA (E.D. Mo. 2012).

action.  The circumstances of the filing and the tone of the allegations demonstrate that plaintiff is attempting to punish those persons he has interacted with during the past few years of his incarceration at PCC.  For example, plaintiff alleges that defendants Steele and Bowersox have engaged in a vast conspiracy against him, across two state prisons, involving numerous correctional officers and years of "planning and targeting."  Using plaintiff's own words, he believes that these two defendants have engaged in "entrapment techniques" to "bring about different obstacles, downfalls and oppressions" to "slowly and methodically carry out attacks against plaintiff."  Indeed, plaintiff goes so far as to state that he believes that defendants Bowersox and Steele have "throughout the years" caused him "physical ailments and disease and mental ailments and stress" to "carry out a vendetta" against him.

An action is malicious when it contains allegations which the plaintiff knows to be false or is a part of a longstanding pattern of abusive and repetitious lawsuits. See In re Tyler, 839 F.2d 1290, 1293 (8th Cir. 1988).  After a review of the instant pleadings and the prior filings in this Court and in the Western District of Missouri, the Court finds that this action has been filed for an improper purpose and will dismiss this action as malicious pursuant to 28 U.S.C. § 1915(e)(2)(B).

**Plaintiff's Due Process Claims Relating to His Stay In Protective Custody and Administrative Segregation Fail As a Matter of Law**

It is well established that prisoners have no right under the Federal Constitution to any specific classification or housing assignment.  See Hewitt v. Helms, 459 U.S. 460, 468 (1983).  To state a claim under § 1983 for unconstitutional placement in Administrative or Disciplinary segregation, a prisoner "must show some difference between his new conditions in segregation and the conditions in the general population which amounts to an atypical and significant hardship."  Phillips v. Norris, 320 F.3d 844, 847 (8th Cir. 2003). Plaintiff has made no such allegations.  As a result, the complaint is frivolous or fails to state a claim upon which relief can be granted.

**Plaintiff's Claims Regarding Body Cavity Searches Do Not State A Basis for Relief**

Plaintiff claims throughout his complaint that he was subjected over and over to body cavity searches.  He also complains he was "groped" and at times even claims "sexual battery" or "assault," but he has failed to allege any specific allegations relating to any of these instances.  Rather, it appears that plaintiff is merely stating a disagreement with the number of times he has been subjected to a naked body cavity search during his stays in Protective Custody and Administrative Segregation.

The Supreme Court has "recognized that deterring the possession of contraband depends in part on the ability to conduct searches without predictable exceptions." Florence v. Board of Chosen Freeholders of the County of Burlington, 132 S.Ct. 1510, 1516 (2012) citing Hudson v. Palmer, 468 U.S. 517(1984). "[C]orrectional officials must be permitted to devise reasonable search policies to detect and deter the possession of contraband in their facilities." Id. at 1517 citing Bell v. Wolfish, 441 U.S. 520, 546(1979). "The task of determining whether a policy is reasonably related to legitimate security interests is 'peculiarly within the province and professional expertise of corrections officials.' " Id. quoting Bell, 441 U.S. at 548. As a result, "in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations courts should ordinarily defer to their expert judgment in such matters." Id. (quotations and citations omitted).

As plaintiff has failed to allege anything specific regarding the alleged body searches, the Court cannot find that the alleged searches referred to by plaintiff were unreasonable. This is especially so given the fact that the Eighth Circuit has found that minor, isolated incidents of sexual touching coupled with occasional offensive sexual remarks do not rise to the level of an Eighth Amendment violation. See, e.g., Berryhill v. Schriro, 137 F.3d 1073, 1075 (8th Cir.1998)

(finding that conduct of prison employees in briefly touching inmate's buttocks, unaccompanied by any sexual comments or banter, was not sexual assault required to support an Eighth Amendment claim); <u>see</u> <u>also</u>, <u>Rhoten v. Werholtz</u>, 243 Fed. Appx. 364 (10th Cir.2007)  (unpublished) (finding inmate's allegations that while correctional officers conducted a pat down search, officer "slammed him against the wall, squeezed his nipples real hard, squeezed his buttocks, and pulled on his testicles real hard causing him a great deal of discomfort and pain," failed to state an Eighth Amendment violation); <u>Jackson v. Madery</u>, 158 Fed. Appx. 656, 661 (6th Cir.2005) (unpublished) (correction officer's conduct in allegedly rubbing and grabbing prisoner's buttocks in degrading manner was "isolated, brief, and not severe" and so failed to meet Eighth Amendment standards); <u>Johnson v. Ward</u>, No. 99-1596, 2000 WL 659354, at *1 (6th Cir. May 11, 2000) (unpublished) (male prisoner's claim that a male officer placed his hand on the prisoner's buttock in a sexual manner and made an offensive sexual remark did not meet the objective component of the Eighth Amendment).

**Plaintiff's Claims Relating to False Conduct Violations and Failure to Pursue Grievances Are Not Actionable Under § 1983**

Plaintiff's claims that several of the defendants gave him false conduct violations are not actionable under § 1983.  <u>See</u> <u>Glick v. Sargent</u>, 696 F.2d  413, 414 (8th Cir. 1983) (per curiam).

Similarly, plaintiff's claims that he was denied grievance forms on occasion, or that the prison failed to follow its own grievance procedures, does not rise to the level of a constitutional violation.  See Spencer v. Moore, 638 F. Supp. 315, 316 (E.D. Mo. 1986) ("In the context of a state prison system, an inmate grievance procedure is not constitutionally required. If the state elects to provide a grievance mechanism, violations of its procedures do not deprive prisoners of federal constitutional rights. Therefore, a state's failure to follow its grievance procedures does not give rise to a § 1983 claim.")

**Plaintiff's Claims Regarding Verbal Harrassment Do Not Rise to the Level Required to Establish a Constitutional Violation**

Plaintiff claims in a conclusory manner throughout his complaint that he was subjected to some unidentified "verbal harassment" - often noted as "racial harassment."  This purported "verbal harassment" does not rise to the level required to establish a constitutional violation. See, e.g., McDowell v. Jones, 990 F.2d 433, 434 (8th Cri. 1993); King v. Olmsted, 117 F.3d 1065, 1067 (8th Cir. 1997) (verbal harassment actionable only if it is so brutal and wantonly cruel that it shocks the conscience, or if the threat exerts coercive pressure on the plaintiff and the plaintiff suffers from a deprivation of a constitutional right).  Moreover, a mere threat to do an unconstitutional act does not create a constitutional wrong. Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir.1987) (noting that a mere naked threat to engage

in an act prohibited by the Constitution is not equivalent to doing the act itself). A deprivation of "peace of mind" similarly does not support a constitutional claim. King, 117 F.3d at 1067. Offensive language is not a constitutional violation. E.g., Martin v. Sargent, 780 F.2d 1334, 1338 (8th Cir. 1985).

**Plaintiff's Claim that Several Prison Regulations Were Violated Fails to State a Claim for Relief Under § 1983**

Plaintiff claims that the prison violated its own procedures with respect to allowing prisoners to inspect their property prior to transferring facilities. Again, this fails to rise to the level of a constitutional violation. And a federal court's inquiry is not whether prison regulation was violated but whether Constitution was violated. Griffin-Bey v. Bowersox, 978 F.2d 455, 457 (8th Cir. 1992) (per curiam).

**Plaintiff's Loss of Property Claims Fail to State a Claim Under § 1983**

Plaintiff makes several claims that he lost property during transfers from prison to prison and when he was placed in Protective Custody or in Administrative Segregation. Plaintiff also states that he was forced to pay for used prison goods that were already in disrepair.

The due process clause may be implicated when a prisoner suffers a loss of property. If the taking of property by prison officials is intentional, however, and the state provides an adequate postdeprivation remedy, there is no violation of due

process.  Hudson v. Palmer, 468 U.S. 517 (1984); Parratt v. Taylor, 451 U.S. 527 (1981), overruled on other grounds, Daniels v. Williams, 474 U.S. 327, 328 (1986); Orebaugh v. Caspari, 910 F.2d 526, 527 (8th Cir. 1990) (taking did not violate due process because Missouri prisoner had adequate postdeprivation remedy).

Plaintiff does not allege that he lacks an adequate postdeprivation remedy. Furthermore, regardless of the existence of a state postdeprivation remedy, no due process claim exists if the loss of plaintiff's property was the result of negligence. See Daniels v. Williams, 474 U.S. 327, 328 (1986); accord Davidson v. Cannon, 474 U.S. 344, 347 (1986); Morton v. Becker, 793 F.2d 185, 188 n.3 (8th Cir. 1986) (Fourteenth Amendment due process clause is not implicated by state official's negligent act causing unintended loss of or injury to life, liberty, or property).

As such, plaintiff's loss of property claims fail to state a violation under § 1983.

**Plaintiff Has Failed to State A First Amendment Access to Courts Claim**

To the extent that plaintiff is attempting to assert an access-to-the-courts claim with regard to having his legal materials strewn about his cell and having the amount he can spend on postage limited to $20 per month, the complaint is legally frivolous.

Plaintiff does not claim that he has suffered "actual prejudice with respect to contemplated or existing litigation." See Lewis v. Casey, 518 U.S. 343, 348 (1996). Accordingly, he cannot assert an access to courts claim.

**Plaintiff Has Failed to Allege a Violation of the First Amendment with Regard to the Restrictions Placed on Newspapers and Magazines in Administrative Segregation**

Plaintiff states that there are prison regulations in place that limit the newspapers and magazines provided to prisoners in Disciplinary Segregation.

Prison regulations are permissible if they are reasonably related to legitimate penological interests and are not an exaggerated response to such objectives. Beard v. Banks, 548 U.S. 521, 528 (2006). Substantial deference is to be given to the professional judgment of prison administrators. Id. The factors to be considered in determining the reasonableness of a prison regulation are set forth by Turner v. Safley, 482 U.S. 78, 89-90 (1987).

First, is there a valid rational connection between the prison regulation and the legitimate governmental interest put forward to justify it? Id. Second, are there alternative means of exercising the right that remain open to inmates? Id. Third, what will be the impact of accommodating the fundamental right on guards and other inmates and on the allocation of prison resources generally? Id. Fourth, are there ready alternatives available for furthering the governmental interest? Id.

In <u>Beard v. Banks</u>, the Supreme Court found that there was no constitutional violation when a Pennsylvania prison restricted access to certain newspapers and magazines during the inmates' disciplinary confinement. <u>See</u> <u>Beard</u>, 548 U.S. at 534 (holding policy of Pennsylvania Department of Corrections restricting access to newspapers, magazines, and photographs by inmates placed in most restrictive level of prison's segregation unit was not a violation of the First Amendment); <u>see also</u>, <u>Wardell v. Duncan</u>, 470 F.3d 954 (10th Cir.2006) (summary judgment granted in favor of prison officials regarding First Amendment challenge to prison policy requiring prisoners to purchase all hobby materials, legal materials, books and magazines from their prison accounts and prohibiting gifts to prisoners of such materials). As such, given the conclusory allegations contained in plaintiff's complaint, the Court cannot say that plaintiff has stated a claim in this instance.

**Plaintiff Has Failed to State a Claim for A Violation of His Dietary Needs**

Plaintiff asserts that he has been denied the "proper protein" for his "kosher diet." He says that his religion, Al-Islam, calls for meats such as turkey, lamb and fish without scales. Plaintiff states that he has instead been served meals of cottage cheese, spinach leaves and broccoli.

Under the First Amendment, "prison inmates are entitled to reasonable accommodation of their religious dietary needs." <u>Love v. Reed,</u> 216 F.3d 682, 689

(8th Cir. 2000).  It is well settled that jail and prison inmates "have the right to be provided with food sufficient to sustain them in good health [and] that satisfies the dietary laws of their religion." <u>McElyea v. Babbitt</u>, 833 F.2d 196, 198 (9th Cir.1987).  "It is not well-established, however, that Muslims must be offered a meat-free diet."  <u>Kind v. Frank</u>, 329 F.3d 979, 981 (8th Cir. 2003) (finding qualified immunity would protect prison officials who offered Muslim inmate pork-free but not vegetarian meals).  Many other federal courts have reached conclusions similar to the Eighth Circuit's.

In <u>Williams v. Morton</u>, 343 F.3d 212 (3d Cir. 2003), the court affirmed the dismissal of a lawsuit similar to plaintiff's because "providing vegetarian meals [to Muslim prisoners], rather than Halal meals with meat, is rationally related to the legitimate penological interests in simplified food service, security and staying within the prison's budget.  <u>Id.</u> at 218.  <u>See</u> <u>also</u>, <u>O'Lone v. Estate of Shabazz</u>, 482 U.S. 342, 352 (1987) (citing practice of giving Muslim prisoners different meal whenever pork is served as example of how Muslim inmates could freely observe their religious obligations); <u>Swetokos v. Allen</u>, No. 09–10085–CIV, 2010 WL 2721846 (S.D.Fla. June 7, 2010), report and recommendation adopted, No. 09–10085–CIVMARTINEZ, 2010 WL 2730768 (S.D.Fla. July 9, 2010) (The acknowledged principle that denying inmates food that satisfies the dictates of their

religion unconstitutionally burdens their right to free exercise of their faith "does not mean that in making dietary accommodations, governmental interests including significant administrative concerns and/or monetary costs are not to be considered." (string cite omitted)); Lewis v. Ryan, No. 04CV2468JLS(NLS), 2008 WL 1944112, at *31 (S.D.Cal. May 1, 2008) ("[T]o date, the majority of circuit and district courts that have looked at this specific issue have concluded there is no such clearly established right to Halal meals, with or without Halal meat, under the First Amendment's Free Exercise of Religion Clause, RLUIPA, or the Equal Protection Clause of the Fourteenth Amendment." (string cite omitted)); Abdul–Malik v. Goord, No. 96 CIV. 1021(DLC), 1997 WL 83402, at *7–8 (S.D.N.Y. Feb.27, 1997) (finding that Muslim inmates' rights were not violated by the prison's failure to provide Halal meat three times a week where a "Religious Alternative Menu" was available); Abdullah v. Fard, 974 F.Supp. 1112, 1118–19 (N.D.Ohio 1997) (finding no constitutional violation where a Muslim inmate was provided a "nutritionally adequate alternative" for a meat entree in lieu of Halal meat); Linehan v. Crosby, 346 F. App'x 471 (11th Cir.2009) (per curiam) (finding that prison had compelling governmental interests to support denial of Kosher meals to Seventh–Day Adventist where vegetarian meals were provided).

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to proceed in forma pauperis [Doc. #2] is **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiff shall pay an initial filing fee of $77.33 within thirty (30) days of the date of this Order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that the Clerk shall not issue process or cause process to issue upon the complaint because the complaint is legally frivolous or fails to state a claim upon which relief can be granted, or both.

**IT IS FURTHER ORDERED** that plaintiff's motion for appointment of counsel [Doc. #3] is **DENIED AS MOOT**.

An appropriate Order of Dismissal shall accompany this Memorandum and Order.

Dated this 30th day of September, 2013.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE